1

2

3

4

5

6

7

```
FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

    JUN 2 2 2012

CENTRAL DISTRICT OF CALIFORNIA
BY  Smy              DEPUTY
```

8       UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA

10      EASTERN DIVISION

11

12  VASILIS FOTIOU SAKELLARIDIS,      )   Case No.  EDCV 12-00464 ODW (AN)

13          Petitioner,               )
                                      )   **ORDER DISMISSING HABEAS**
14      v.                            )   **PETITION AS TIME-BARRED**
                                      )
15  WARDEN, Corcoran State Prison,    )

16          Respondent.               )

17  _____ )

18          Before the Court is a first amended petition for writ of habeas corpus ("FAP")

19  brought by Vasilis Fotiou Sakellaridis ("Petitioner"), a state prisoner proceeding *pro*

20  *se.* For the reasons discussed below, the FAP is dismissed with prejudice because the

21  Court finds it is time-barred.

22                          **I. BACKGROUND**

23          The pending FAP raises three claims directed at Petitioner's July 19, 2005

24  conviction in the California Superior Court for San Bernardino County (case no.

25  FSB038966) of first degree residential robbery with a firearm enhancement, for which

26  he was sentenced to 14 years in state prison.

27          Pursuant to the Court's duty to screen habeas petitions before service, the

28  Magistrate Judge found it plainly appeared from the face of the FAP and relevant state

1   court records that this action was barred by the one-year statute of limitations of the

2   Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C.

3   §2244(d)(1)(A). Accordingly, on May 16, 2012, the magistrate judge issued an Order

4   to Show Cause [7] ("OSC") notifying Petitioner the action appeared to be time-barred

5   absent some basis for tolling or an alternative start to AEDPA's one-year limitations

6   period under 28 U.S.C. § 2244(d)(1)(B)-(D). The OSC discussed the various bases for

7   tolling and directed Petitioner to show cause why the action should not be dismissed

8   as time-barred by filing a written response no later than June 5, 2012. (OSC at 4-9.)

9   Petitioner has filed his Response to the OSC ("Response"), and the matter now stands

10  submitted.

11                                **II. DISCUSSION**

12  **A.    Standard of Review**

13         Rule 4 of the Rules Governing Section 2254 Cases in the United States District

14  Courts, 28 U.S.C. foll. § 2254, requires a judge to "promptly examine" a habeas

15  petition and "[i]f it plainly appears from the petition and any attached exhibits that the

16  petitioner is not entitled to relief in the district court, the judge must dismiss the

17  petition and direct the clerk to notify the petitioner." Local Rule 72-3.2 of this Court

18  also provides "[t]he Magistrate Judge promptly shall examine a petition for writ of

19  habeas corpus, and if it plainly appears from the face of the petition and any exhibits

20  annexed to it that the petitioner is not entitled to relief, the Magistrate Judge may

21  prepare a proposed order for summary dismissal and submit it and a proposed

22  judgment to the District Judge." C.D. Cal. R. 72-3.2. Further, an untimely habeas

23  petition may be dismissed *sua sponte*, however, the district court must give the

24  petitioner adequate notice and an opportunity to respond before doing so. *Day v.*

25  *McDonough*, 547 U.S. 198, 209-10, 126 S. Ct. 1675 (2006); *Herbst v. Cook*, 260 F.3d

26  1039, 1043 (9th Cir. 2001); *see also Wood v. Milyard*, --- U.S. ---, 132 S. Ct. 1826, ----

27  (2012) (reaffirming *Day*'s holding that district courts are permitted to consider, *sua*

28  *sponte*, the timeliness of a state prisoner's habeas petition, and itself holding that

1  "courts of appeals, like district courts, have the authority - though not the obligation -
2  to raise a forfeited timeliness defense on their own initiative.").

3  **B.   Statute of Limitations**

4      The FAP is governed by the AEDPA, which establishes a one-year statute of
5  limitations for state prisoners to file a habeas petition in federal court. 28 U.S.C. §
6  2244(d)(1); *see Lindh v. Murphy*, 521 U.S. 320, 327-37, 117 S. Ct. 2059 (1997). In
7  most cases, the limitations period is triggered by "the date on which the judgment
8  became final by conclusion of direct review or the expiration of the time for seeking
9  such review." 28 U.S.C. § 2244(d)(1)(A).

10     The face of the FAP and relevant state court records[1] establish the following
11  relevant facts. Petitioner was convicted of the above offense on July 19, 2005, and was
12  sentenced on March 27, 2009. On March 30, 2010, the California Court of Appeal
13  affirmed the judgment of conviction (case no. E048166). Petitioner did not file a
14  petition for review of that decision in the California Supreme Court. (Pet. at 2-3; state
15  court records.) Thus, for purposes of AEDPA's limitations period, his conviction
16  became final on May 9, 2010, the fortieth day after the California Court of Appeal
17  affirmed the judgment. *See* CAL. CT. R. 8.366(b)(1); 8.500(e)(1); *Waldrip v. Hall*, 548
18  F.3d 729, 735 (9th Cir. 2008); *Duncan*, 297 F.3d at 812-13.

19     The statute of limitations then started to run the next day, May 10, 2010, and
20  ended a year later on May 9, 2011. 28 U.S.C. § 2244(d)(1)(A); *see also Patterson v.*
21  *Stewart*, 251 F.3d 1243, 1245-47 (9th Cir. 2001) (the limitations period begins to run
22  on the day after the triggering event pursuant to Fed. R. Civ. P. 6(a)). Petitioner did

23

24  [1]   The Court takes judicial notice of Petitioner's records in the superior court,
25  which are available on the Internet at http://www.sb-court.org, and in the appellate
courts, which are available on the Internet at http://appellatecases.courtinfo.ca.gov
26  ("state court records"). *See Smith v. Duncan*, 297 F.3d 809, 815 (9th Cir. 2002)
(federal habeas courts may take judicial notice of relevant state court records),
27  *overruled on other grounds as recognized in Cross v. Sisto*, 676 F.3d 1172 (9th Cir.
28  2012).

1  not constructively file his original petition until March 21, 2012 -- 317 days (more

2  than ten months) after the expiration of the limitations period.[2/] Accordingly, absent

3  some basis for tolling or an alternative start date to the limitations period under 28

4  U.S.C. § 2244(d)(1), the pending FAP is time-barred.

5  **C.    Statutory Tolling**

6        AEDPA includes a statutory tolling provision that suspends the limitations

7  period for the time during which a "properly-filed" application for post-conviction or

8  other collateral review is "pending" in state court. 28 U.S.C. § 2244(d)(2); *Waldrip*,

9  548 F.3d at 734; *Bonner v. Carey*, 425 F.3d 1145, 1148 (9th Cir. 2005). An

10 application is "pending" until it has achieved final resolution through the state's post-

11 conviction procedures. *Carey v. Saffold*, 536 U.S. 214, 220, 122 S. Ct. 2134 (2002).

12 The limitations period is not tolled between the time a final decision is issued on direct

13 state appeal and the time a state collateral challenge is filed because there is no case

14 "pending" during that interval. *Thorson v. Palmer*, 479 F.3d 643, 646 (9th Cir. 2007);

15 *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999). On collateral review, however,

16 "intervals between a lower court decision and a filing of a new petition in a higher

17 court," when reasonable, fall "within the scope of the statutory word 'pending'" thus

18 tolling the limitations period. *Saffold*, 536 U.S. at 221, 223; *Evans v. Chavis*, 546 U.S.

19 189, 192, 126 S. Ct. 846 (2006).

20       Further, to qualify for statutory tolling during the time the petitioner is pursuing

21 collateral review in the state courts, his first state habeas petition must be

22 constructively filed before, not after, the expiration of AEDPA's one-year limitations

23

24       [2/]    Pursuant to the "mailbox rule," a *pro se* prisoner's federal habeas petition
   is deemed to be filed on the date the prisoner delivers the petition to prison authorities
25 for mailing to the clerk. *Houston v. Lack*, 487 U.S. 266, 270-71, 108 S. Ct. 2379
26 (1988); *Huizar v. Carey*, 273 F.3d 1220, 1222 (9th Cir. 2001); *see also* Habeas Rule
   3(d). For purposes of the timeliness analysis, and absent any evidence to the contrary,
27 the Court finds Petitioner constructively filed the original petition by delivering it to
28 the prison mail system on March 21, 2012, the date reflected on his proof of service.

1    period. *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) ("[S]ection 2244(d)

2    does not permit the reinitiation of the limitations period that has ended before the state

3    petition was filed"); *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Webster v.*

4    *Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) ("A state-court petition [] that is filed

5    following the expiration of the limitations period cannot toll that period because there

6    is no period remaining to be tolled").

7         The face of the FAP and relevant state court records establish Petitioner filed

8    four state habeas petitions, including two in the superior court, one in the California

9    Court of Appeal, and one in the California Supreme Court. For the reasons discussed

10    below, none of those petitions qualify for statutory tolling.

11         Petitioner's superior court records establish that his first state habeas petition

12    (case no. WHCSS900058) was filed before he was sentenced by the trial court, on

13    February 18, 2009, and was denied on February 27, 2009. Since that petition was

14    denied more than a year before the limitations period started to run on May 10, 2010,

15    it was never pending during the relevant period and could not toll the statute. *See*

16    *Tillema v. Long*, 253 F.3d 494, 498 (9th Cir. 2001) (state collateral review motion

17    filed before the AEDPA limitations period commenced qualified for tolling only

18    because it was still pending after the limitations period began), *abrogated on other*

19    *grounds as recognized in Ford v. Pliler*, 590 F.3d 782, 789 n.3 (9th Cir. 2009).

20         Petitioner's second state habeas petition, filed on May 17, 2011, was also filed

21    in the superior court. (FAP at 3-4; state court records.) That petition does not qualify

22    for statutory tolling for two reasons. First, it cannot be included in Petitioner's first

23    round of collateral review that was triggered by his first state habeas petition. As

24    stated above, a California petitioner's state "collateral review is considered to be

25    pending during the interim between a writ being denied at one court level and a new

26    petition being filed at the next higher court level . . . ." *Porter v. Ollison*, 620 F.3d

27    952, 958 (9th Cir. 2010). However, "each time a petitioner files a new habeas petition

28    *at the same or a lower level*, . . . the subsequent petition has no effect on the already

1    pending application, but triggers an entirely separate round of review." *Delhomme v.*
2    *Ramirez*, 340 F.3d 817, 820 (9th Cir. 2003) (emphasis added), *abrogated on other*
3    *grounds as recognized in Waldrip*, 548 F.3d at 733. Second, that petition was also
4    ineligible to trigger a new, separate round of review because it was successive. *See*
5    *Porter*, 620 F.3d at 958 ("For tolling to be applied based on a second round, the
6    petition cannot be untimely or an improper successive petition."). More specifically,
7    the superior court assigned the second petition the same case number as the first
8    petition, placed it on the same docket, and labeled it as a "Subsequent Petition For
9    Writ of Habeas Corpus." The superior court also denied that petition the day after it
10   was filed on the basis that it was a "serial petition alledging [sic] no new facts . . . ."
11   (FAP, Ex. H; state court records.) As a result, the Court finds that petition was an
12   improper successive petition, and therefore merely overlapped Petitioner's sole round
13   of state habeas review and did not trigger a new one. *See Porter*, 620 F.3d at 958.

14       In his Response, Petitioner takes issue with the superior court's ruling that his
15   second state habeas petition was successive. Specifically, he argues that he raised two
16   additional issues in that petition, which were not raised in the first one. (Resp. at 4-5.)
17   However, Petitioner's argument focuses too heavily on the court's statement that the
18   petition alleged "no new facts" instead of the court's ultimate ruling and the law
19   governing successive habeas petitions in California. His second petition challenged
20   the same conviction, the same set of facts surrounding that conviction, and was filed
21   well over *two years* after the first petition. As a result, it was in violation of
22   California's rule against untimely, successive petitions. *See generally In re Clark*, 5
23   Cal. 4th 750, 21 Cal. Rptr. 2d 509 (1993). More important, though, even if Petitioner's
24   second habeas petition *had* triggered a separate round of review, he would still be
25   untimely. Assuming without finding that petition was constructively filed on April 30,
26
27
28

1  2011,[3/] and further assuming without finding that his round of state collateral review
2  also included his last two state habeas petitions (court of appeal case no. E054148 and
3  California Supreme Court case no. S197245), he would be entitled to 298 days of
4  statutory tolling, from April 30, 2011, until February 22, 2012, the date the California
5  Supreme Court denied his last state habeas petition. *See* CAL. CT. R. 8.532(b)(2)(C);
6  *Corjasso v. Ayers*, 278 F.3d 874, 880 n.1 (9th Cir. 2002) (orders of the California
7  Supreme Court denying habeas petitions are final upon filing). Given 298 days, the
8  expiration of the limitations period would have been extended from May 9, 2011, to
9  March 2, 2012. As stated above, however, the original petition initiating this action
10  was constructively filed on March 21, 2012. Thus, while the Court rejects Petitioner's
11  statutory tolling argument and finds his second state habeas petition *did not* trigger a
12  separate round of review, the Court also finds that, even if it had, the result would be
13  the same.

14      Since Petitioner's second state habeas petition merely overlapped his round of
15  state collateral review, Petitioner is also not entitled to interval tolling. Specifically,
16  the interval between his original state habeas petition in the superior court and his
17  petition in the court of appeal was unreasonable. As stated above, intervals between
18  a lower court decision and the filing of a new petition in a higher court toll the
19  limitations period, but only *where reasonable. Saffold*, 536 U.S. at 221, 223; *Evans*,
20

21      [3/]  Although Petitioner correctly concedes that his second state habeas petition
22  was filed after the limitations period expired (Resp. at 5), the mailbox rule also applies
23  to *pro se* state habeas petitions. *Stillman v. Lamarque*, 319 F.3d 1199, 1201 (9th Cir.
2003). The Court, pursuant to its authority to take judicial notice of state court records,
24  has obtained a copy of that petition and finds Petitioner dated it and the accompanying
25  proof of service on April 30, 2011. However, this is not a reliable indicator of the
constructive filing date because, in the Court's experience, it is not unusual for
26  prisoners to sign and date their petitions well before they actually deliver them to the
27  prison mail system for filing. Accordingly, the Court merely uses the April 30, 2011
date to illustrate that Petitioner would still have been untimely even assuming the
28  earliest possible constructive filing date.

1    546 U.S. at 192. However, here, the interval between the superior court's February 27,
2    2009 decision and the filing of Petitioner's habeas petition in the court of appeal on
3    August 1, 2011 spanned 885 days (approximately 2½ years). That interval was
4    "substantially longer than the '30 to 60 days' that 'most States' allow for filing
5    petitions, and [Petitioner has] offered no justification for the delay[] as required under
6    California law." *Chaffer v. Prosper*, 592 F.3d 1046, 1048 (9th Cir. 2010) (holding that
7    intervals of 115 and 101 days were unreasonable and did not qualify for statutory
8    tolling) (citations omitted); *see also Banjo v. Ayers*, 614 F.3d 964, 970 (9th Cir. 2010)
9    (holding that a 146-day interval was unreasonable). As a result, Petitioner is not
10   entitled to interval tolling between the denial of his first state habeas petition in the
11   superior court and the filing of his habeas petition in the court of appeal.

12       Moreover, without interval tolling, Petitioner is not entitled to any statutory
13   tolling for the pendency of his last two state habeas petitions in the state court of
14   appeal and California Supreme Court. (FAP at 4-5, Ex. G; state court records.) As
15   discussed above, the first of those petitions was not filed in the court of appeal until
16   August 1, 2011, nearly three months after the limitations period expired on May 9,
17   2011. Thus, neither of those petitions qualifies for statutory tolling. *Ferguson*, 321
18   F.3d at 823.

19       Finally, in his Response, Petitioner also points to a motion he made in the
20   superior court for DNA testing, which it appears was filed on February 1, 2011, and
21   denied on February 7, 2011, as well as a subsequent petition for writ of mandate he
22   filed in the court of appeal challenging the superior court's ruling, which was denied
23   on March 25, 2011. (FAP, Exs. E, F, M, N.) He claims he should be entitled to
24   statutory tolling for the pendency of those pleadings. (Resp. at 5-6.) However, while
25   Petitioner presumably sought DNA testing so he could *then* challenge his underlying
26   conviction, his attempts to secure a DNA test were not themselves "properly filed
27   application[s] for State post-conviction or other collateral review *with respect to the*
28   *pertinent judgment or claim.*" § 2244(d)(2) (emphasis added); *see also Hodge v.*

1   *Greiner*, 269 F.3d 104, 107 (2d Cir. 2001) (the petitioner was not entitled to statutory
2   tolling for a state court motion that "did not challenge his conviction. Rather, it sought
3   material he claimed might be of help in developing such a challenge, . . . ."); *Johnson*
4   *v. Lewis*, 310 F. Supp. 2d 1121, 1125 (C.D. Cal. 2004) (the petitioner was not entitled
5   to statutory tolling for a petition for writ of mandate because it sought the return of
6   property seized during his arrest and was not directed at his underlying conviction and
7   sentence). Further, even if those documents had qualified for statutory tolling, they
8   would only entitle Petitioner to 52 days of tolling (February 1 to March 25, 2011).
9   Extending the limitations deadline from May 9, 2011, to June 30, 2011, would be of
10  no help to Petitioner, since he initiated this action on March 21, 2012.[4]

11        The face of the FAP and state court records establish Petitioner is not entitled
12  to statutory tolling, and his Response to the OSC does not alter that conclusion.

13  **D.    Alternative Start of the Statute of Limitations**

14        **1.    State-Created Impediment**

15        In rare instances, AEDPA's one-year limitations period can run from "the date
16  on which the impediment to filing an application created by State action in violation
17  of the Constitution or laws of the United States is removed, if the applicant was
18  prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B). Asserting that
19  the statute of limitations was delayed by a state-created impediment requires
20  establishing a due process violation. *Lott v. Mueller*, 304 F.3d 918, 925 (9th Cir.
21  2002). Petitioner's filings do not set forth any facts that show Petitioner is entitled to
22  relief under this provision.

23  ///
24  ///
25

26  [4]    In the Response, Petitioner claims he is entitled to *tolling* for his DNA
27  request and subsequent petition for writ of mandate, but he then calculates the
    limitations period to *restart* the day after his petition for writ of mandate was denied.
28  (Resp. at 6.) That calculation is rejected as erroneous.

1         **2.    Newly Recognized Constitutional Right**

2         AEDPA provides that, if a claim is based upon a constitutional right that is

3 newly recognized and applied retroactively to habeas cases by the United States

4 Supreme Court, the one-year limitations period begins to run on the date which the

5 new right was initially recognized by the Supreme Court. 28 U.S.C. § 2244(d)(1)(C).

6 In his Response, Petitioner contends one of his pending claims is based upon a newly-

7 recognized constitutional right. Specifically, he argues his ineffective assistance of

8 counsel claim based on his trial attorney's alleged failure to communicate a plea offer

9 (FAP at 10) is brought pursuant to *Lafler v. Cooper*, --- U.S. ---, 132 S. Ct. 1376

10 (2012); and *Missouri v. Frye*, --- U.S. ---, 132 S. Ct. 1399 (2012), both of which were

11 decided on March 21, 2012. (Resp. at 6-7.) Petitioner's contention is erroneous.

12         First, while it is true that in *Frye* the High Court articulated a general rule that

13 "defense counsel has the duty to communicate formal offers from the prosecution to

14 accept a plea on terms and conditions that may be favorable to the accused," *Frye*, 132

15 S. Ct. at 1408, the Court's clarification of a defense counsel's duty is not a newly-

16 recognized *constitutional right*. The right at issue is Petitioner's Sixth Amendment

17 right to the effective assistance of counsel, the legal standard of which has been

18 recognized since 1984. *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052

19 (1984). In fact, Petitioner raised his related ineffective assistance claim in the state

20 courts more than five months before *Frye* or *Lafler* were decided, so his contention

21 that his claim is based on those cases is false and misleading.[5/] (FAP, Ex. G at 5.)

22 Second, Petitioner ignores the requirement that the newly-recognized right at issue

23 must have been "made retroactively applicable to cases on collateral review." §

24 2244(d)(1)(C). Neither *Frye* nor *Lafler* has been held to apply retroactively. *Cf. Reedy*

25

26 ─────────────────

27      [5/]    Moreover, if his claim had been based exclusively on *Frye* and *Lafler*, it

28 would also be unexhausted because he never raised it in the state courts. *See* § 2254(b)(1)(A).

1  *v. Hill*, 383 Fed. Appx. 689, 690 (9th Cir. 2010) (cited pursuant to Ninth Circuit Rule
2  36-3) (filing a habeas petition within one year of the Supreme Court's decision in
3  *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), did not render that
4  petition timely under 2244(d)(1)(C) because *Blakely*'s holding was not retroactive).

5      Petitioner is not entitled to an alternate start of the limitations period based upon
6  a newly-recognized and retroactive constitutional right.

7      **3.    Discovery of Factual Predicate**

8      AEDPA also provides that, in certain cases, its one-year limitations period shall
9  run from "the date on which the factual predicate of the claim or claims presented
10 could have been discovered through the exercise of due diligence." 28 U.S.C. §
11 2244(d)(1)(D); *Hasan v. Galaza*, 254 F.3d 1150, 1155 (9th Cir. 2001). Petitioner's
12 filings do not set forth any facts that show Petitioner is entitled to an alternate start
13 date to the limitations period based upon the late discovery of the factual predicate.

14 **E.    Equitable Tolling**

15      The AEDPA's limitations period "is subject to equitable tolling in appropriate
16 cases." *Holland v. Florida*, --- U.S. ---, 130 S. Ct. 2549, 2560 (2010). However,
17 "[e]quitable tolling is justified in few cases" and "the threshold necessary to trigger
18 equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule."
19 *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003) (*quoting Miranda v. Castro*, 292
20 F.3d 1063, 1066 (9th Cir. 2002)).

21      "[A] litigant seeking equitable tolling bears the burden of establishing two
22 elements: (1) that he has been pursuing his rights diligently, and (2) that some
23 extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408,
24 418, 125 S. Ct. 1807 (2005); *Lawrence v. Florida*, 549 U.S. 327, 336, 127 S. Ct. 1079
25 (2007). *Pace*'s diligence prong requires the petitioner to show he engaged in
26 reasonably diligent efforts to file his § 2254 petition throughout the time the
27 limitations period was running. *Mendoza v. Carey*, 449 F.3d 1065, 1070 (9th Cir.
28 2006); *see also Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (equitable tolling

requires a showing that "the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll" and "extraordinary circumstances prevented him from filing his petition on time"). The petitioner must also demonstrate that he exercised reasonable diligence in attempting to file his habeas petition after the extraordinary circumstances began otherwise the "link of causation between the extraordinary circumstances and the failure to file [is] broken." *Spitsyn*, 345 F.3d at 802. *Pace*'s "extraordinary circumstances" prong requires the petitioner to "additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances made it impossible to file a petition on time." *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotations and citations omitted). Further, equitable tolling determinations are "highly fact-dependent," *Mendoza*, 449 F.3d at 1068, and the petitioner "bears the burden of showing that equitable tolling is appropriate." *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005).

In the Response, Petitioner makes two separate arguments that implicate equitable tolling principles. First, he claims he never received any notification that his first state habeas petition had been received by the court, filed or denied. (Resp. at 2.) This argument is frivolous as it concerns *Pace*'s equitable tolling requirements. The Court has already discussed the fact that Petitioner's first state habeas petition was filed and summarily denied in February 2009, before Petitioner was even sentenced, well over a year before the AEDPA limitations period started running, and more than two years before he filed another state habeas petition. Petitioner has not proffered any explanation as to why in well over three years since he submitted that petition for filing he has never once followed up to determine if it was even received, let alone decided. And, most pertinent to equitable tolling, he has certainly not shown any diligence in filing a timely federal habeas petition while the limitations period was running from May 10, 2010, until May 9, 2011. *Mendoza*, 449 F.3d at 1070 (a petitioner seeking equitable tolling must demonstrate he made diligent efforts "during

Page 12

1 | the running of the AEDPA time limitation. . . .") Petitioner's allegations that he
2 | showed diligence by filing post-trial motions, pursuing a direct appeal, and seeking
3 | DNA testing are irrelevant to the diligence required for equitable tolling of AEDPA's
4 | limitations period, and if anything, his actions conclusively show his alleged
5 | unawareness of the denial of his first petition was in no way an extraordinary
6 | circumstance that made it impossible to file a federal habeas petition on time. *Ramirez*,
7 | 571 F.3d at 997.

8 | Second, Petitioner claims his appellate attorney's mistakes contributed to his
9 | untimely FAP. He first argues that he delayed filing his second state habeas petition
10 | based on counsel's advice. (Resp. at 3.) That argument fails. Petitioner refers to a letter
11 | attached as Exhibit A to his Response, written by his appellate counsel on July 21,
12 | 2009, informing Petitioner that he was going to draft and file his opening brief on
13 | direct appeal. In the letter, counsel also stated:

14 | I read some of the materials you wrote to [Appellate Defenders
15 | Inc.]. I ask for your own sake that you not file a pro per habeas corpus
16 | petition until I have read the record and communicated my opinion(s).
17 | You only get one bite of the apple. You risk the court simply denying
18 | your writ (the most likely outcome) and leaving you with no other
19 | remedy.

20 | (Resp., Ex. A.) Counsel's advice was not only correct, but it came in July 2009, nearly
21 | 10 months before the AEDPA limitations period commenced, and before Petitioner's
22 | opening brief on appeal was even filed. Petitioner has not alleged or shown how
23 | appellate counsel's sound advice very early in the representation, that Petitioner
24 | refrain from doing anything rash before the attorney could review his case, had any
25 | bearing whatsoever on Petitioner's failure to file a federal habeas petition while the
26 | AEDPA limitations period was running *the following year. See Allen v. Lewis*, 255
27 | F.3d 798, 800 (9th Cir. 2001) (the petitioner must show the alleged extraordinary
28 | circumstances were the but-for and proximate cause of his untimeliness). Indeed, it

1   was Petitioner's own decision to wait until February 2011 to request DNA testing, and
2   then wait even longer after he determined there was "no other known remedy" (Resp.
3   at 3), to file a state habeas petition in an attempt to exhaust his pending claims. He
4   cannot fault his counsel's helpful advice in July 2009, that he had "one bite of the
5   apple," for his own egregious lack of diligence. *See Spitsyn*, 345 F.3d at 802 (without
6   reasonable diligence there is no "link of causation between the extraordinary
7   circumstances and the failure to file . . . .").[6]

8       Petitioner next claims his appellate counsel on a separate occasion miscalculated
9   the commencement of the AEDPA limitations period. (Resp. at 3&5.) This contention
10  is rejected because an attorney's miscalculation of the limitations period does not
11  constitute an extraordinary circumstance sufficient to warrant equitable tolling. *See*
12  *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001). Moreover, to the extent
13  counsel made a miscalculation, there is nothing to show it had any effect on the
14  timeliness of the pending FAP. Petitioner failed to constructively file a federal habeas
15  petition until March 21, 2012, several months later than his counsel advised, so he did
16  not rely on his attorney's advice, and it was not the cause of his untimeliness. *Allen*,
17  255 F.3d at 800.

18      Lastly, Petitioner claims to the extent it appears he lacked diligence for failing
19  to file a petition for review on direct appeal, it was "only because Petitioner's counsel
20  . . . refused his requests to do so." (Resp. at 3.) But, Exhibit B to Petitioner's Response
21  establishes that, on March 31, 2010, the day after the court of appeal denied
22  Petitioner's direct appeal, counsel wrote Petitioner a letter informing him of the denial,
23  and that he would not be filing a petition for review because he believed it had no
24  chance of success. Counsel then supplied Petitioner with all the pertinent information
25
26
27      [6]   Additionally, Petitioner's appellate counsel sent him his trial transcripts on
28  April 8, 2010, more than a month before the start of AEDPA's limitations period.
    (Resp., Ex. C)

1  for filing one *in pro se.* (Resp., Ex. B.) Petitioner could certainly, through the exercise

2  of reasonable diligence, have filed a petition for review. *Mendoza*, 449 F.3.d at 1070

3       The face of the FAP and state court records establish Petitioner is not entitled

4  to any equitable tolling, and his Response does not alter that conclusion.

5                        **O R D E R**

6       Based upon the foregoing, the Court finds the FAP is time-barred. Further, by

7  way of the OSC, the Court finds Petitioner has received notice and an adequate

8  opportunity to show cause why the FAP should not be dismissed as time-barred.

9  ACCORDINGLY, IT IS HEREBY ORDERED THAT the reference to the magistrate

10  judge is vacated and the FAP is dismissed with prejudice. The clerk is directed to enter

11  judgment dismissing this action with prejudice and notifying Petitioner of said

12  judgment. Any and all pending motions are terminated.

15  DATED: June 21, 2012

                                 OTIS D. WRIGHT, II
16                      UNITED STATES DISTRICT JUDGE

18  Presented by:

21       Arthur Nakazato
     United States Magistrate Judge